Collins *v.* Ahern (Wyse, Appellant).

Argued October 1, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*John A. Metz,* with him *John A. Metz, Jr.,* and *W. W. Stoner,* for appellant.

*Andrew G. Smith,* for appellee.

OPINION BY MR. JUSTICE STERN, November 23, 1936:

On March 23, 1925, plaintiff entered into a written contract with W. J. Caldwell, Trustee, which set forth that "the said W. J. Caldwell, as Trustee, is the holder of a certain contract entered into between the Boyce and Veeder Company, Inc., a New York corporation, and W. R. Ahern, C. C. Park and Robert T. Weise, the interests in which contract were subsequently assigned to the said W. J. Caldwell, as Trustee, for the exclusive distribution, within the City of Pittsburgh, and adjacent territory, as outlined in said contract, of gasoline treated with Boyce-Ite blue-green ingredients, and which contract the said W. J. Caldwell hereby agrees to assign to a proposed corporation to be formed hereafter for the purpose of carrying out the provisions of the contract aforesaid." Caldwell agreed to purchase from plaintiff the gasoline to be treated with such ingredients, also oil, and to pay plaintiff "as a bonus for the supervision of accounts between the parties" the sum of $20 per week. The contract was to be for one year unless sooner terminated by either party upon sixty days' notice.

Wishing to be better assured as to the relations between Caldwell and the three persons in whose names the Boyce-Ite contract had been taken, plaintiff requested Caldwell to obtain from them some evidence of his right to operate under that contract. Accordingly Caldwell presented a letter addressed to plaintiff, dated

March 24, 1925, and reading as follows: "This is to certify that we, the undersigned, owners of the Boyce & Veeder Company, Inc., contract for distributing Boyce-Ite Blue-Green Gasoline in Pittsburgh and adjacent territory, do hereby appoint and authorize W. J. Caldwell to represent us in all matters pertaining to the execution or working of said contract. This authority to be pending the organization of a corporation to conduct business under the above mentioned contract; it being understood that upon organization, the corporation is to supersede W. J. Caldwell, Trustee, as the party of the first part in an agreement dated March 23rd, 1925, made for the purpose of buying and selling gasoline and oil." This letter was signed by W. R. Ahern, C. C. Park, and Robert T. Wyse.

In accordance with his agreement with Caldwell of March 23, 1925, plaintiff furnished gasoline and oil until April 1, 1926, the supplies being delivered to a gasoline station operated by Caldwell under the name of The Gasoline Sales Company. In June, 1925, Caldwell caused a Delaware corporation to be chartered under the same name, and, beginning in that month or in July, according to testimony offered by defendants, the corporation conducted the business of the station, all the assets thereof, together with the Boyce-Ite contract, being assigned to the corporation as consideration for the issue of its capital stock to Caldwell. The present suit was brought by plaintiff against the signers of the letter of March 24, to recover for various items claimed by him to be due under the contract of March 23. Park having died, the administratrix of his estate was named as one of the defendants, but later the suit was discontinued as to the Park estate and prosecuted only against Ahern and Wyse. A verdict was rendered for plaintiff in the sum of $5,888.03. Defendants' motions for judgment n. o. v. and for a new trial were overruled; defendant Wyse appeals.

The storm center of the controversy is the letter to plaintiff of March 24, certifying to the authority of Caldwell. While ambiguous enough to invite litigation, it can, upon analysis, be construed only as an assurance to plaintiff that the signatories were the owners of the Boyce-Ite contract, that Caldwell was appointed and authorized by them to be their representative "in all matters pertaining to the execution or working of said contract" and that the agreement of March 23 was a "matter" so "pertaining." When plaintiff thereafter supplied gasoline and oil to Caldwell, he had a right to assume, therefore, that those who signed the letter were principals of Caldwell and as such liable for the latter's obligations under his agreement with plaintiff. Defendants stress the fact that Caldwell is named in that agreement as trustee, but whether such designation be explained by his alleged statement to plaintiff that he was acting as trustee for the corporation to be formed, or whether the appellation was utilized for some other purpose, it does not affect the liability of defendants arising from their letter to plaintiff. Under whatever designation Caldwell acted, he could have been, so far as the law is concerned, an agent for others, and the declaration that he was such agent on their behalf was given in defendants' letter. In view of that statement they cannot escape liability even if, as they assert, they had no beneficial interest in the Boyce-Ite contract and had been made parties to it by Caldwell without their knowledge or consent.

While, for the reasons stated, plaintiff is entitled to recover from defendants, the extent of the recovery is subject to a limitation not properly treated by the court below. The letter upon which alone defendants' liability can be predicated conferred upon Caldwell the status of agent only "pending the organization of a corporation to conduct business under the above mentioned [Boyce-Ite] contract." That the corporation was organized in June or July, 1925, seems to be conceded, and it follows that plaintiff cannot hold defendants liable as principals of

Caldwell for supplies furnished after that time. The learned trial judge charged the jury that the organization of the corporation absolved defendants from further liability only if it was formed "in good faith" and not as a "cloak for the operations of Mr. Caldwell." There was no basis for the injection into the case of any such question. Both the contract of March 23 and the letter of March 24 provided for the organization of a corporation; indeed, in the contract with plaintiff, Caldwell expressly obligated himself to assign the Boyce-Ite contract to such corporation. Nor is there any justification for the position later assumed by the court in banc that "If the corporation was formed by Caldwell alone, and the defendants had no interest in it, then the corporation which was created was not the corporation which was contemplated by the defendants in their letter of March 24, 1925." There is no indication anywhere in the documents or in the oral testimony that defendants or any other specified persons were to have an interest in the corporation to be formed. The intent of the parties seems to have been that a corporation was to take over the Boyce-Ite contract and the agreement of March 23, and thereupon all personal liability to plaintiff, both of Caldwell and of defendants as his principals, was to cease. There must, therefore, be a retrial at which plaintiff's claim must be itemized to show which of the obligations contained in it were incurred prior to the organization of the corporation in June or July, 1925, (whatever date may be established by the testimony) and which of the items arose thereafter; it is only for the former that recovery can be had in this action. Caldwell testified that he paid plaintiff everything due before the corporation came into existence, but plaintiff was not bound by such testimony and if it is not true he can establish the facts at the retrial.

While defendants offered evidence that plaintiff had notice of the formation of the corporation, such proof was not necessary because the duration of Caldwell's

agency was expressly limited to that time, and when the organization of the corporation took place the agency ipso facto terminated; there was no provision for the giving of notice.

There is another limitation applicable to plaintiff's claim which must be borne in mind when the case is retried. The letter of March 24 imposes liability upon defendants arising from Caldwell's agency only "in all matters pertaining to the execution or working of said [Boyce-Ite] contract." From the present record it is difficult to determine whether all the items of the claim fall within that category. Plaintiff presented in evidence a general statement approved by Caldwell. A jury might find that the latter was impliedly authorized as agent of the defendants to give such approval, but this would extend only to the correctness of the items and not to defendants' liabilty regarding each of them. The claim of $2,426.56, on a promissory note, which was not on the statement approved by Caldwell, was properly eliminated by the trial judge. Other items, one of $3,-500, one of $397.77, and one of $400, were apparently for gasoline and oil furnished by plaintiff,* and to the extent to which they covered transactions prior to the time of organization of the corporation they would be recoverable. The item of $1,040 for services seems fairly to fall within the scope of the letter of March 24, but subject to the same limitation as to the time element. Further testimony will be required in regard to the item of $300 advanced for gasoline tax to show what connection, if any, it has with the Boyce-Ite and March 23rd contracts; the letter of March 24 did not embrace all transactions arising from the business of the gasoline station but only those relating to these contracts.

---

*The item of $3,500 was stated by plaintiff to be an "investment," but it seems fairly clear that it was money deposited for the purpose of financing the payment of gasoline subsequently furnished to Caldwell, and that it was so used.

It is not necessary to decide whether the estate of C. C. Park should have been retained as a party defendant; plaintiff having discontinued as to it, by order of the court, without objection by the other defendants, the latter cannot now complain of such action. Neither is there merit in the criticism of the learned trial judge's charge that recovery must be against both defendants or neither; whatever the legal principles generally applicable to procedure against joint defendants, the jury, under the facts of the present case, would not have been justified in holding one responsible and absolving the other; there was therefore no harm in the instruction of the court in that regard.

The judgment is reversed and a new trial awarded.